UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:07-CR-126 |
| V. | ) | (Phillips / Shirley) |
| | ) | |
| | ) | |
| | ) | |
| CHAD JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter came before the Court for an evidentiary hearing on January 7, 2008, upon Defendant Chad Johnson's Motion to Suppress [Doc. 49].[1] Chad Johnson was present for the hearing, along with his counsel Joe Costner. The government was represented by Assistant United States Attorney Tracee Plowell. The Court took the motion, the memorandum filed in support of suppression, the government's response, evidence received at the hearing and the well-considered arguments of counsel under advisement January 8, 2008.

For purposes of the suppression hearing, the parties agreed that on September 27, 2007, T.B.I. Agent Danny Wright presented an affidavit to Loudon County General Sessions Judge William Russell in support of Wright's request for a search warrant for the person of Chad Johnson,

---

[1] The deadline for filing pretrial motions in this case is January 25, 2008, but Mr. Johnson brought an early challenge to the search warrant applicable to evidence that may be introduced against him. No other defendant has joined Johnson's motion, nor does it appear from the record before the Court that any other defendant is in a position to do so.

503 Halls Ferry Road and 619 Halls Ferry Road (both in Lenoir City, Tennessee). The affidavit referred to three confidential informants (hereinafter CI 1, CI 2, and CI 3). CI 1 and CI 2 evidently had no history of providing information to the police from which a "track record" might be deduced; CI 3 is said to have provided truthful information leading to arrests and prosecutions in the past. Judge Russell approved a search warrant, but commanded only the search of the person of Chad Johnson and 619 Halls Ferry Road. At the evidentiary hearing, Wright testified that he presented no additional facts or testimony to Judge Russell in support of his application for the search warrant.

The Grand Jury has charged Chad Johnson and seven others in a conspiracy to distribute cocaine and crack cocaine, and specifically charging that Johnson possessed a quantity of cocaine, crack cocaine and a handgun for this purpose on September 27, 2007. Indictment [Doc. 11]; Superseding Indictment [Doc. 22]. Johnson filed a Motion to Suppress [Doc. 49] with the affidavit and search warrant attached as exhibits for consideration, along with a supporting Brief and Memorandum of Law [Doc. 50]. The United States has responded in opposition at [Doc. 62]; to which Johnson has replied at [Doc. 64].

### I: OMISSION OF 503 HALLS FERRY ROAD FROM COMMAND TO SEARCH
#### 1. POSITION OF THE DEFENDANT

Johnson calls the Court's attention to Judge Russell's grant of authority to the officers to search, contained near the end of the Search Warrant. The authority to search is extended to 619 Halls Ferry Road and the person of Chad Johnson, but not to 503 Halls Ferry Road. Johnson argues that such a glaring deficiency cannot have authorized the search of 503 Halls Ferry Road.

## 2. POSITION OF THE GOVERNMENT

The United States responds that the command to search portion of the search warrant omitted 503 Halls Ferry Road inadvertently through clerical error and not an affirmative denial of authority to search. The government argues that the typographical error is evident from a plain, common sense reading of the warrant. The government argues that "503" obviously should have be included between the words "at" and "and" in the command section, just as was worded in the affidavit and in the finding of probable cause section of the search warrant. The government argues that the intention of the command section, taken in context with the rest of the search warrant, the attached photographs and the supporting affidavit, was clearly to authorize the search of both addresses.

## 3. ANALYSIS

At the hearing, the government stated that none of the evidence the United States seeks to introduce at trial was seized from 503 Halls Ferry Road. Accordingly, the issue of whether evidence is subject to exclusion because the command section did not properly authorize a search of 503 Halls Ferry Road has no practical impact at all. Despite this reality, the Court will address the arguments made by the parties on their merits in the event it should become an issue.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. ....[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; <u>Stanford v. Texas</u>, 379 U.S. 476, 485-86 (1965). Johnson's challenge asserts that the residence 503 Halls Ferry Road was not described with such "particularity" because it was not listed in the command of placed to be

searched. The language of a search warrant must be strictly construed. See e.g., United States v. Wright, 468 F.2d 1184, 1185 (6th Cir. 1972) (describing this rule as "well settled."). "[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant," in order to assure that those "searches deemed necessary [remain] as limited as possible." Dalia v. United States, 441 U.S. 238, 260 (1979)(quoting, respectively, Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 394 n. 7 (1971), and Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). The Court must consider the description of the places to be searched provided in the search warrant within this context.

To determine whether a search warrant describes the place to be searched with the particularity required by the Fourth Amendment, a judge must ask "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." United States v. Durk, 149 F.3d 464, 465 (6th Cir.1998). An error in description does not automatically invalidate a search warrant. United States v. Pelayo-Landero, 285 F.3d 491, 495 -496 (6th Cir. 2002) (relying upon United States v. Prout, 526 F.2d 380, 387 (5th Cir.1976); and United States v. Bedford, 519 F.2d 650, 655 (3d Cir.1975) (stating that the standard for determining sufficient particularity of a description in a search warrant "is one of practical accuracy rather than technical nicety."))

The test for determining whether a search warrant describes the premises to be searched with sufficient particularity "is not whether the description is technically accurate in every detail," Prout, 526 F.2d at 387-88, but rather whether the description is sufficient "to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable

probability that another premises might be mistakenly searched." United States v. Gahagan, 865 F.2d 1490, 1496 (6th Cir.), cert. denied, 492 U.S. 918 (1989) (quoting United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.1979)); and United States v. Pelayo-Landero, 285 F.3d 491, 495 -496 (6th Cir. 2002) quoting United States v. Dorrough, 927 F.2d 498, 500 (10th Cir.1991) (that the "requisite specificity of the description ... depends heavily on the facts of each case").

In this case, the command to search reads:

YOU ARE THEREFORE COMMANDED to make an immediate search on the person or premises of CHAD JOHNSON at and 619 Hall Ferry Road, Lenoir City, Tennessee and in the premises used and occupied by them and whose pictures are attached as follows:
Search Warrant, [Doc. 50-3] [emphasis in original]

This language is immediately followed by a copy of two photographs, each of a house with an address as caption: "503 Halls Ferry Road, Lenoir City, TN"; and "619 Halls Ferry Road, Lenoir City, TN." The affidavit submitted in support of the search warrant provides information that Johnson distributed and stored drugs at one of the residences listed above, and kept the proceeds or revenue "in the other residence." While the officer did not distinguish between the residences as to which was used for distribution and drug storage and which was the revenue house, the affidavit clearly denotes the two residences "listed above" (i.e., 503 and 619 Halls Ferry Road) as those being involved in the alleged drug trafficking, each with a distinct function in the operation. Wright testified that he did not provide any additional information to Judge Russell in support of his request and that, after reading the documents, Judge Russell did not have any questions for the affiant.

The need for accuracy in the details of search warrants is a paramount Fourth Amendment principle. Searches by police are unquestionably a great intrusion into personal privacy and liberty, and accordingly, precisely defining the scope and physical boundaries of the search will limit it to

only those locations where probable cause has been established. The ideal of strict accuracy is, at times, in conflict with the reality that police conducting an investigation of suspected criminal activity at a particular location are under pressure to quickly ascertain that, in fact, illegal actions are taking place. The Supreme Court and the Sixth Circuit have recognized that despite best efforts, inaccurate information, such as a wrong address, may get into the affidavits for search warrants and into the warrants themselves. For example, under the circumstances in <u>United States v. Pelayo–Landero</u>, 285 F.3d 491 (6th Cir. 2002), the Sixth Circuit upheld the accuracy of a search warrant's description of a mobile home to be searched, although the number given for the postal address was incorrect.

The touchstone is whether "the description is such that an officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." <u>Steele</u>, 267 U.S. at 503. In this context, the Sixth Circuit rule provides that "[t]he knowledge of the executing officers in this case is a factor which may cure any insufficiencies in the search warrant's description of the premises." <u>United States v. Brown</u>, 49 F.3d 1162, 1169 (6th Cir. 1995)(citing <u>United States v. Williamson</u>, 1 F.3d 1134, 1136 (10th Cir.1993).) Furthermore, "when one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment." <u>United States v. Gahagan</u>, 865 F.2d 1490, 1499 (6th Cir.), <u>cert. denied</u>, 492 U.S. 918 (1989).

Here, the affiant officer was one of the executing officers. Wright testified that he provided copies of the warrant to the nine other officers involved in its execution and asked them to read it through, and that Wright believes they did so in advance of the search. None of the officers reported

the discrepancy. The Court finds the omission of 503 Halls Ferry Road from the list of places to be searched does not render the search warrant invalid. All evidence suggests that Judge Russell was entirely "aware of the scope of the search he was authorizing," Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms, 452 F.3d 433, 440 (6th Cir.2006) (en banc) (quoting Groh, 540 U.S. at 561 n 4 ), and that search included both houses. There is no reason to believe, and no evidence before the Court, that Judge Russell found only probable cause to search the person of Chad Johnson and 619 Halls Ferry Road, but distinguished or deleted 503 Halls Ferry Road. To the contrary, the initial paragraph of the search warrant indicates that Judge Russell *did* find probable cause to search both 503 and 619 Halls Ferry Road:

> Proof by Affidavit having been made to me by Tennessee Bureau of Investigation Special Agent Danny Wright that there is probable cause to believe that certain evidence of a crime, to wit: violation of state laws as set forth in TCA Sections 39-12-204 [RICO], 39-14-903 [Money Laundering], 39-17-417, 39-17-408 [Tennessee Drug Control Act of 1989], will be found upon CHAD JOHNSON at 503 and 619 Halls Ferry Road, Lenoir City, Tennessee ...
>
> Search Warrant, at 1 [Doc. 50-3].

Further, the Affidavit clearly includes and identifies both residences and specifically states the reason two residences are the object of the Search Warrant.

The omission of the residence from the grant-of-authority section was apparently the result of a mere clerical error, as evidenced by the placement of "and" in the phrase, "premises of CHAD JOHNSON at and 619 Halls Ferry Road ."[2] The impact of this error, and the officers' failure to

---

[2] By way of illustration, the Affidavit states, in relevant part, that evidence of illegal activity is expected to be found by searching "CHAD JOHNSON at 503 and 619 Halls Ferry Road, Lenoir City, Tennessee; and the Search Warrant states, in relevant part, that the judge found probable cause to believe certain evidence would be found upon "CHAD JOHNSON at 503 and 619 Halls Ferry Road, Lenoir City, Tennessee." The final paragraph grants authority to

7

notice it, is governed by a directly analogous Sixth Circuit opinion in a recent case from this district, United States v. Watson, 498 F.3d 429 (6th Cir., 2007). In Watson, the warrant *entirely omitted* the address from the command section, although photographs, tax records and other documentation about the house were provided elsewhere. The Sixth Circuit turned immediately to a consideration of the officers' good faith reliance on the search warrant without addressing whether the defect rendered the warrant invalid. Watson, 498 F.3d at 433. The Sixth Circuit concluded "that suppression here would not further the purpose of the exclusionary rule-deterring police misconduct." Id., citing United States v. Leon, 468 U.S. 897, 918 (1984). Recognizing that "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble, " the court nonetheless concluded:

> In a case such as this, however, where the error is one that can be characterized as a minor, unintentional drafting oversight; the error is unapparent by even a close read, let alone a simple glance; and the error goes unnoticed by the officer who applied for the warrant, the judicial commissioner who issued the warrant, and the officers who executed the warrant, we cannot conclude that this is one of those unusual cases in which exclusion will further the purposes of the exclusionary rule.
>
> Watson, 498 F.3d at 433 - 434 (internal quotations omitted).

Here, the Affidavit clearly contained both residences by specific address reference and the Search Warrant itself clearly found probable cause to search both residences by specific address reference. Further, all three references use identical language and it is clear that the omission of "503" between the words "at" and "and" was a typographical error.

---

search the person and premises of "CHAD JOHNSON at [ ] and 619 Halls Ferry Road, Lenoir City, Tennessee," the clearly intended placement of "503" indicated by the Court's bracketing herein.

8

The Court finds that, based on the warrant, the officers reasonably believed that they had authority to search both the residences and exclusion of evidence would not serve any goal of the exclusionary rule under these circumstances. Any argument that the omission of 503 Halls Ferry Road would effect the search at 619 Halls Ferry Road is not supported by any facts or law cited by the defendant and none has been found by this Court.[3]

## II: DID THE AFFIDAVIT PROVIDE A BASIS FOR A FINDING OF PROBABLE CAUSE?

### 1. POSITION OF THE DEFENDANT

Chad Johnson challenges the sufficiency of Agent Wright's affidavit [Doc. 49, Exhibit 1] as a basis from which the issuing judge could make an independent determination of probable cause. Johnson argues that the affidavit is replete with Wright's conclusory statements, but offers no facts upon which Judge Russell could drawn his own conclusions. Johnson argues that although the affidavit seems to include a good deal of information, a careful look at Wright's statements reveals they are almost exclusively his own hollow conclusions.

Johnson draws the Court's attention to a series of statements contained in the affidavit which express only Wright's conclusions. For example, the affidavit says that two confidential informants were interviewed and said they supplied three kilos of cocaine to Johnson on September 25th. The reliability of these informants is purportedly established by the statement that these two "have independently supplied information corroborating each other to the Affiant concerning the delivery

---

[3] While the Court's ruling that the omission of the number "503" in this case does not suffice to invoke the exclusionary rule, the fact that the government has affirmatively represented that no evidence was obtained from the search of the 503 Halls Ferry Road residence should preclude admission of any such evidence at trial. As such, despite the Court's ruling, the pragmatic result of the hearing is the exclusion of any evidence from 503 Halls Ferry Road.

of cocaine to Chad Johnson and others known to the Affiant to be involved in the distribution of cocaine." Johnson argues that this statement supplies no information from which Judge Russell could have concluded that the two confidential informants corroborated one another, it merely says that they did. Johnson also argues that the affidavit supplies no facts in support of a conclusion that these persons supplied Johnson with the cocaine, as they claimed, aside from the statements that "additional cocaine" was recovered from one of the CI s on September 26th. The defendant argues that no link is made between the CI s and Johnson; there is no information suggesting these CI s even knew Johnson. No detail is provided about the alleged three kilo drug transaction from September 25th, nor the quantity of the "additional cocaine" found on September 26th. Similarly, the affidavit claims that CI 1 and CI 2:

> have within the past forty-eight hours provided extensive information concerning their cocaine distribution network and activities, which verifies and matches the information developed by law enforcement while conducting an investigation into the distribution of cocaine and marijuana for the last twelve months.
> [Doc. 50-1].

Johnson argues that no information was provided to the issuing judge about who these individuals were, the location(s) or amount of cocaine involved in the reported transactions, or any details of the nebulous "investigation." At the hearing, Attorney Costner urged the Court to try to find in the affidavit any facts from which such a conclusion might be drawn. Referring to this description, Attorney Costner argued that these prior drug transactions could have happened in Mississippi for all that is known from the affidavit; they could have taken place 10 years ago.

## 2. POSITION OF THE GOVERNMENT

The United States responds that the defendant's argument has "parsed out the affidavit in a line-by-line fashion" as criticized in Illinois v. Gates, 462 U.S. 213 (1983). The government argues that corroboration, per United States v. Allen, 211 F.3d 970 (6th Cir. 2000) merely requires a sworn statement that the information was corroborated. Further, the government argues that the obtaining of a quantity of cocaine from one confidential informant corroborated his involvement in drug transactions and trafficking. The government also relies on CI 3 and the knowledge of the officer affiant.

## 3. ANALYSIS

In determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit," otherwise known as a "four corners review." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); United States v. Smith, 783 F.2d 648, 654 (6th Cir. 1986) (holding that a court assessing the validity of a search warrant is limited to the four corners of the warrant). Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. Thus, the Supreme Court has observed that probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than

false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176 (1949); Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). Whether an affidavit supplies probable cause to issue a search warrant is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238.

In addition, in reviewing a Search Warrant, the issuing judge's determination that probable cause exists is entitled to "'great deference.'" United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (quoting Gates, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id. In determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." Hatcher, 473 F.2d at 323; see also Whiteley v. Warden, 401 U.S.560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only "'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998) (quoting Gates, 462 U.S. at 238-39) (alterations in original).

The task of the issuing judge is simply to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the judge had a "substantial basis for . . . conclud[ing] that probable cause existed." Gates, at 238 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

While an affidavit in support of a search warrant must state facts supporting an independent

12

judicial determination that the informant is reliable, those facts need not take any particular form. United States v. Allen, 211 F.3d 970, 975-976 (6th Cir. 2000).[4] The affidavit could state that police corroborated significant parts of the informant's story, "or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. Information need not be legally competent evidence in a criminal trial to be considered in the probable cause determination for a search warrant. Draper v. United States, 358 U.S. 307, 311 (1959). "As long as the issuing judge *can conclude independently* that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." United States v. Jackson, 470 F.3d 299, 307 (6th Cir. 2006) (citing Allen, 211 F.3d at 976.) [emphasis added]. Information from an informant may be corroborated by innocent facts provided by the informant. United States v. Jones, 159 F.3d 969, 974 (6th Cir. 1998). It is not necessary that the police corroborate the criminal conduct itself. Gates, 462 U.S. at 243-44; Alabama v. White, 496 U.S. 325, 331 (1990). Uncertainty regarding the informant's veracity can be compensated for by a strong showing of his basis of knowledge or information that provides detail that can be corroborated. United States v. King, 227 F.3d 732, 743 (6th Cir. 2000).

> "Veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of a CI's report. We do not agree, however, that these elements should be understood as entirely separate and independent

---

[4] The Court notes that it does not agree with the government's contention that Allen stands for the proposition that corroboration can be established, for search warrant purposes, by the mere statement of an officer that information was corroborated. While Allen does note that a confidential informant's information need not *always* be independently corroborated, it specifically hold that substantial independent corroboration is necessary in the absence of any "indicia of the informant's reliability." It was precisely on this issue, the evidence establishing the informant's reliability, that led the Allen court to hold "corroboration is not a necessity in such a case." Allen, 211 F.3d at 976.

13

requirements to be rigidly exacted in every case.... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

United States v. Allen, 211 F.3d 970, 972 -973 (6th Cir. 2000)(citing Gates, 462 U.S. at 230.)

Here, the information provided as to CI 1 and CI 2 in the affidavit consists of the following factual statements:

1. They both stated that they together supplied three kilos of cocaine to Chad Johnson on or about September 25, 2007.

2. They both independently supplied information corroborating each other regarding the delivery of cocaine to Chad Johnson and others known to the affiant to be involved in distributing cocaine.

3. The access of CI 1 and CI 2 to cocaine in the quantity reported to have been delivered to Chad Johnson was verified by the recovery of cocaine on and from one of the CI s on September 26, 2007.

4. In the preceding 48 hours, both CI 1 and CI 2 provided extensive information on their cocaine distribution network and activities; this information verified and matches information developed by law enforcement during a 12 month investigation into such activities in the area.

Fact 1, taken alone, without additional facts or evidence of the informants' reliability would arguably be insufficient. However, in this case, the admission by both informants that they supplied three kilos of cocaine to Chad Johnson is clearly incriminating and constitutes a significant statement against their penal interests, providing an ample basis for an independent conclusion as to the veracity and reliability of CI 1 and CI 2.The Court must also consider a statement against penal interest, as made by CI 1 and CI 2 here, as a traditional veracity consideration. The Supreme Court has held that if an informant's information tends to be self-incriminating, the declaration against penal interest might be considered sufficient, in and of itself, to establish reliability. United

14

States v. Harris, 403 U.S. 573 (1971); United States v. Ventresca, 380 U.S. 102 (1965); see also United States v. Farese, 612 F.2d 1376 (5th Cir. 1980), reh'g denied, 616 F.2d 568 (5th Cir. 1980). In Harris, the court observed:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-*sufficient at least to support a finding of probable cause to search*.
>
> Harris, 403 U.S. at 583-584 [emphasis added]; see accord, United States v. Czuprynski, 46 F. 3d 560 (6th Cir. 1995).

Additionally, the information is of direct and personal involvement in criminal activity, not someone's opinion, a conclusion or an unsubstantiated report by a removed party. Furthermore, Fact 2 indicates that both CI 1 and CI 2 independently corroborated one another regarding the delivery of cocaine to other persons, who were known to the affiant to be involved in distributing cocaine. Fact 3, while admittedly void of additional specific information which would have assisted the judge, does establish that cocaine was actually recovered from one of these two CI s the very next day, September 26, 2007. This fact corroborates, to some degree, that CI's involvement in cocaine transactions or trafficking. Finally, Fact 4 indicates that recent "extensive" information from CI 1 and CI 2 regarding their cocaine distribution activities verified and matched information developed in a year-long investigation.

Additionally, the Court must also consider the other facts provided in the affidavit:

5. That the affiant was aware of Chad Johnson's reputation for possession, sale, and distribution of cocaine.

6. CI 3 stated that Johnson was presently distributing cocaine and other narcotics and that Johnson had done so in the past. CI 3's reliability was established by his record of assistance to law enforcement over the

15

preceding two years, which had proved reliable and accurate, resulting in the recovery of narcotics and other arrests and convictions.

7. The specific "rich detail" provided by the confidential informants that Johnson stored and distributed narcotics from one of the residences described, and kept his drug revenue at the other.

8. The information regarding the affiliation of Johnson and CI 1 and CI 2 with the Black Gangster Disciples and sales of large quantities of cocaine to that gang.

9. Chad Johnson's prior arrests for cocaine possession.

10. The affiant's extensive knowledge, training and experience in narcotics investigation and the information recounted regarding the activities and practices of drug dealers and drug trafficking.

The Court's analysis is based upon a totality of the circumstances as presented in the affidavit. The Court finds that the affiant officer could have and should have provided additional information regarding the reliability of CI 1 and CI 2 and the nature and extent of the corroboration and verification alleged. However, as in Allen, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." Allen, 211 F.3d at 975.

Based on the totality of the circumstances, as found within the information contained in the affidavit, as noted herein this Court finds that a neutral and detached judge "may believe that evidence of a crime will be found" in these locations (quoting Allen, 211 F.3d at 976) and that the information provided *does* establish a fair probability that contraband or evidence of a crime will be found at these locations.

As such, and giving the conclusions drawn by the issuing judge the appropriate deference, this Court finds and holds that Judge Russell had a substantial basis for concluding that probable cause existed for the issuance of this search warrant.

### 4: CONCLUSION

For the reasons stated herein, the Court's recommendation is that Defendant Chad Johnson's Motion to Dismiss or Suppress Evidence **[Doc. 49]** be **DENIED**.[5]

> Respectfully submitted,
>
> s/ C. Clifford Shirley, Jr.
> United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).